[No. 17895.   Department Two.   November 7, 1923.]

E. E. DAVIS & COMPANY, *Appellant*, v. SCANDINAVIAN-AMERICAN BANK OF TACOMA *et al.*, *Respondents.*[1]

CONTRACTS (12, 77, 78)—PARTIES—CONTRACTUAL RELATION—PARTICULAR CAPACITY—EVIDENCE OF AGREEMENT—SUFFICIENCY. A contract to employ plaintiff to go east for the purpose of expediting the construction of a bank building, which was being put up by a building company organized for that purpose by the bank, after notice to the bank that it could not use its funds in the construction of the building, is shown to have been made between plaintiff and the building company, and not by the bank, where the president of the bank in making the offer stated that "I will pay you" a specified salary, instructed the cashier of the building company, in plaintiff's presence, to draw a check for expenses, and all preliminary payments were made by the building company.

INTEREST (23)—COMPUTATION—DEMAND. Where demand notes called for seven per cent interest per annum, and twelve per cent per annum after demand, it is error to compute interest at twelve per cent prior to the bringing of the action, where no demand was shown.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered July 5, 1923, upon findings in favor of the defendant upon its cross-complaint, in an action on contract, tried to the court. Affirmed, with modification as to interest.

*James V. Reynolds,* for appellant.

*Guy E. Kelly, Thomas MacMahon, Frank D. Oakley,* and *Robert B. Abel,* for respondents.

[1]Reported in 219 Pac. 874.

PEMBERTON, J.—Appellant, E. E. Davis & Company, a corporation, instituted this action against the Scandinavian-American Bank of Tacoma for recovery upon an oral contract wherein it is alleged that the respondent bank agreed to pay $5,000 per month and expenses for the services of appellant for the months of July and August, 1920.

Some time prior to the date of the contract, plans had been perfected for the construction of a steel and concrete bank and office building, at the corner of 11th street and Pacific avenue, in the city of Tacoma. The bank was to occupy the basement and first floor and a portion of the second floor. A corporation known as the Scandinavian-American Building Company was organized and capitalized for $200,000, this stock having been subscribed for by O. S. Larson, president of the Scandinavian-American Bank, at which time the bank had a capitalization of $400,000.

The appellant entered into a contract with the Scandinavian-American Building Company to erect the structural steel for the proposed building at the agreed price of $40,000. The building company had purchased the steel from the McClintic-Marshall Company of Pittsburgh, Pennsylvania, which company failed, because of a car shortage, to furnish the steel at the time provided in the contract, resulting in the delay of the construction of the building.

The bank was paying $1,000 per month rent for temporary quarters pending the construction of the new building, and the president of the bank, O. S. Larson, stated to E. E. Davis, the manager of appellant company, that the bank was losing business in excess of $5,000 a month by reason of the delay in the construction of the building, and stated that they would pay this sum and his expenses if he would go east and

hasten the arrival of the steel for the construction of the building. On July 6, 1920, E. E. Davis, pursuant to this arrangement, went east and spent two months in the performance of his service and fulfilled his portion of the agreement.

At the time Mr. Davis started on his trip, Mr. Larson, in his presence, directed the bookkeeper of the Scandinavian-American Building Company to draw a check in favor of Mr. Davis for the sum of $500 to apply upon his expenses. He also stated that Mr. Davis was going east on some business of his own, and he thought it would be beneficial to have Mr. Davis attempt to expedite the shipment of the steel and that he had agreed to pay his expenses. This check was so drawn and signed by the officers of the Scandinavian-American Building Company in favor of E. E. Davis personally, and by him endorsed and cashed.

While Mr. Davis was in the east, he needed additional money for expenses, and $1,000 was advanced to him by Frederick Webber, the architect in charge of the building for the Scandinavian-American Building Company, and the building company thereafter reimbursed Mr. Webber for the sum so advanced. Mr. Davis drew upon Larson personally for an additional $500, which was paid by the Scandinavian-American Building Company under Mr. Larson's direction.

Upon the return of Mr. Davis, he presented to Larson a statement for his expenses, at which time Larson requested him, as a special favor, to not present his claim for services at that time. Thereafter respondent borrowed $10,000 from the bank, giving to the bank two promissory notes, payable on demand for $5,000 each, with the understanding that the $10,000 for services should be adjusted when the building contract was completed. About sixteen days after giving the second note, the bank went into liquidation.

Appellant instituted this suit for the allowance of the account for services rendered in the amount of $10,000, and interest, and requested that these notes be credited thereon, in accordance with the agreement between the parties at the time the notes were executed.

In answer to the complaint of appellant, the respondent alleges that the contract set forth in the complaint, if made at all, was made with the Scandinavian-American Building Company, and not with the Scandinavian-American Bank; and as a further defense alleges:

"That the said Scandinavian-American Bank of Tacoma did not have the power under its articles of incorporation and under the laws of the State of Washington, to engage in the business of erecting the building described in plaintiff's complaint herein; that the said O. S. Larson did not have the power under the by-laws of the said Scandinavian-American Bank of Tacoma, or under the articles of incorporation of the said bank, to enter into the contract set forth in plaintiff's complaint, and that the said contract, if made, was *ultra vires* as to the said bank and as to the said O. S. Larson as an agent of the said bank."

In its cross-complaint, respondent asked judgment against appellant for the amount due, including interest and costs, upon the two promissory notes for $5,000 each, held by respondent against appellants.

At the close of the case of appellant, a nonsuit was granted for two reasons: First, that the evidence showed that the contract was made by E. E. Davis individually, instead of E. E. Davis & Company; and, second, that the contract was *ultra vires* as to the defendant bank and also as to its president. And in its findings thereafter entered, the court made the additional finding that the contract was entered into with the Scandinavian-American Building Company. Judgment was entered dismissing the action of appellant,

and in favor of respondent and against appellant upon the two promissory notes, from which judgment this appeal is taken.

In June, 1920, Mr. Larson, the president of the bank, gave credit to the Scandinavian-American Building Company upon the books of the bank for $200,000. This was done after he had received positive orders from the bank commissioner that the bank's money should not be used for the Scandinavian-American Building Company, and was done without the knowledge or consent of the other officers of the bank. The company, however, was charged interest upon this amount, which would indicate a loan to the building company rather than that the bank was a stockholder of the company. The stock was issued to the bank in December, 1920, and may have been held as collateral security to the payment of the $200,000 so advanced.

Mr. Larson testified concerning the contract in part as follows:

"Q. This conversation you say took place then at the building? A. Yes, sir. Q. Now, is that the time you agreed with Mr. Davis to employ him? A. Yes, sir. Q. What did he say to you, and what did you say to him? A. I told him if he would go back there and get that steel I would pay him $5,000 a month for the time he was gone if he could get it. Q. Was that the exact words you said to him? A. Yes, sir. Q. Exactly what did he say in reply to that. A. He said he would try to make arrangements to go immediately after the first of the month. . . . Q. You said then, 'I will pay you $5,000 a month and expenses,' did you? A. Yes, sir."

E. E. Davis testified that Larson said to him:

"I will give you $5,000 a month and expenses if you will go back East and see if you can get that steel. Q. What answer did you give him? A. I said I would try to go."

Concerning the payment of the first $500 upon the expenses, Charles C. Sharp, bookkeeper for the Scandinavian-American Building Company, testified as follows:

"Q. Tell the court what transpired. A. Mr. Larson came to my window with Mr. Davis and said to me 'Mr. Davis is going East on some business in which he is interested and while he is there I want him to see if he cannot hurry forward our steel shipments; I have agreed to pay the expenses of his trip; I think it will be money well spent; draw him a check for $500'."

It is the contention of appellant that, while E. E. Davis used the word "I," he meant "E. E. Davis & Company," and that while O. S. Larson knew that he used the word "I," he was speaking for and on behalf of E. E. Davis & Company.

The evidence shows that the initial money to pay the expenses of Mr. Davis was advanced by the Scandinavian-American Building Company to him personally, that the additional $1,000 advanced by the architect of the building company to him personally was thereafter paid by the building company, and that the $500 draft upon Mr. Larson was paid by the building company under his direction to Mr. Davis personally. These are the controlling facts in determining the intention of the parties. If there was a contract, it was between the Scandinavian-American Building Company and E. E. Davis individually.

The notes sued upon provided for seven per cent interest per annum and twelve per cent interest per annum from the date of demand until the date of payment. The judgment allows twelve per cent interest from and after April 15, 1921. There being no proof of demand having been made prior to the bringing of the action, the notes should bear interest at the rate of seven per cent up to and including September 30, 1921,

the date of the bringing of the action, and twelve per cent thereafter. In all other respects, the judgment is affirmed and the case remanded with directions to modify the judgment as above indicated.

MAIN, C. J., FULLERTON, PARKER, and TOLMAN, JJ., concur.